# GRAFTON,

## DECEMBER TERM, A. D. 1860.

### RICH *v.* ELDREDGE.

A witness testified that he made a charge on the books of the deceased, of cash $110, in his presence and by his direction, from a memorandum made by the deceased. It was held the evidence was incompetent, the book not being evidence of a cash payment of that amount.

The letters of a person offered as a witness are not competent evidence of interest to exclude his testimony.

If such letters are admitted, and the witness is permitted to testify, subject to the decision of the jury as to his interest, the verdict will not be set aside on that account, the letters being competent to contradict him, or admissible as the statements of a party in interest.

An instruction to the jury was held to be proper, that, if the testator exhibited to the plaintiff his books, and presented to him a detailed statement of the account between them, as dealers in lumber, showing a balance against the plaintiff, and they were examined by him without objection, and the account kept, without objection, a year and a half, without any claim for the balance now asserted to be due, it is evidence of assent to the correctness of the account.

APPEAL from commissioners of insolvency. The declaration filed was upon an account annexed, for lumber sold, amounting to $849.59.

The action was referred to an auditor, who disallowed the plaintiff's claim. The plaintiff elected a trial by jury, and filed the necessary affidavit.

On the trial, the plaintiff called his son, George Rich, as a witness to prove the sale and delivery of the lumber. The defendant objected to his competency, on the ground

that he was jointly interested in the lumber in question, and so a party in interest in the suit. Among other evidence, some letters of the witness and of the plaintiff to the testator were introduced, in which the lumber was spoken of by both as belonging to them jointly. The plaintiff objected to the evidence, but the court received it, and entertaining doubts, and finding the question depended on intricate matters of fact, permitted the witness to testify, and submitted the question of his interest as a party to the jury.

For the purpose of contradicting George Rich, and to show his interest, the defendant was permitted to read letters from George Rich to the testator, against the plaintiff's objection. F. H. Keyes was called and examined by the plaintiff as a witness, and the defendant, against the plaintiff's objection, was permitted to put in evidence to contradict and explain his testimony, two letters, written by him to the testator.

The account books of the testator were permitted to go to the jury with instructions, one of which was that they were not evidence of the money charged to the plaintiff upon them. Among the items charged, was one under date of " Sept. 14, 1850. To cash toward commission lumber, $110." J. Buttman, who was in the employment of the testator during the period of the transactions between the parties, and assisted in keeping his books, was called by the defendant, and permitted to testify against the plaintiff's objection, that he made this entry upon the return of the testator from the plaintiff's residence, about the 15th of September, 1850, the testator standing by him, and instructing him what to write, from a memorandum he brought home with him on that occasion.

There was a conflict of testimony as to what occurred between the plaintiff and testator, at the time when, in March, 1856, the plaintiff and his son, calling to settle

Rich *v.* Eldredge.

with him, the testator presented to him an account stated, showing a balance of indebtedness from the plaintiff and his son to the testator; the evidence of the defendant tending to show that the plaintiff, although the books were exhibited to him, and he examined the account fully, made no objection whatever, either to the details or to the result, while that of the plaintiff tended to show that, though he made no other objection, he told the testator he did not understand the account.

The evidence of the defendant tended to show that after the books were exhibited to the plaintiff, and he had examined the account, making no objection whatever, he took the account and carried it home with him, and never afterward called on the testator for payment, though he lived and carried on business at the same place until his death, October 6, 1857; while the plaintiff's evidence tended to show that subsequently, on the same day the testator presented his account to the plaintiff, showing a balance in his favor, he admitted to the plaintiff that he owed him, and promised to pay him as soon as he got some money.

As to the effect of the evidence on this point, the court instructed the jury that if they found, from all the evidence before them, that in March, 1856, the testator exhibited to the plaintiff his books, and presented to him a detailed statement of the accounts between them, showing a balance against the plaintiff, and that this statement was received and examined by the plaintiff, without his objecting either to the details or to the result contained in it; and if they found that from that time until the death of the testator, a year and a half afterward, the plaintiff made no objection to the account, though retaining it in his possession, and did not complain that it was incorrect, and made no call upon the testator for any payment, such circumstances were strong evidence to be considered by them, from which they might find that the plaintiff

assented, and intended to assent to the correctness of the account. To these instructions the plaintiff excepted.

The court instructed the jury that if they found, from all the evidence bearing upon the point, that the plaintiff and George Rich were jointly interested as owners in the lumber sued for, when it was sold to the testator, whether as equal owners or otherwise, so that the testator became indebted to them jointly for the price, then George was incompetent as a witness, as a party in interest, and they should lay his testimony out of the case; otherwise they should weigh and consider it. To these instructions the plaintiff excepted.

In his argument to the jury, the plaintiff's counsel insisted that the report of the auditor was no more to be regarded than a verdict which had been set aside. Upon this point the court instructed the jury that the report of the auditor was competent evidence for their consideration; that being in favor of the defendant, it made a *primâ facie* case for him, and must stand, unless impeached or overthrown by the plaintiff's evidence; that in effect they were to determine, upon all the evidence before them, whether or not the auditor had arrived at a correct conclusion. To these instructions the plaintiff excepted. The plaintiff moved for a new trial.

*Benton & Ray*, for the plaintiff.

*D. Blaisdell*, for the defendant.

BELL, C. J. The authority of the court to refer the question of the interest of a person offered as a witness to the jury in a doubtful case, is sustained by the decision of the court in *Dearborn* v. *B., C. & M. R. R.*, 24 N. H. 179 ; *Bartlett* v. *Hoit*, 33 N. H. 151. The ruling seems to have been in favor of the plaintiff, and he has little reason to complain of it.

The declarations of a person called as a witness, made out of court, are not evidence of his interest in the cause, so as to affect his competency as a witness. They are statements made without oath, and are open to all the objections against hearsay evidence. *Martin* v. *Farnham*, 24 N. H. 191. And it is not material whether such statements are merely verbal or are in writing, or, as in this case, letters. The letters of George Rich were not competent evidence of his having an interest in the cause, so as to exclude his testimony.

But George Rich was not excluded. His testimony was received upon the doubts entertained by the court upon the plaintiff's own letters and the other evidence, subject to the decision of the jury. Though some of these letters were admitted before the question of his admissibility as a witness was referred to the jury, yet their admission would be no ground for setting aside the verdict, if it afterward appeared that they were properly admissible. If the jury, then, found that he was not interested, and so was a competent witness, then these letters were competent to contradict his testimony upon the stand. *Gerrish* v. *Pike*, 36 N. H. 510. It does not appear, from any recital of the testimony, that any such contradiction was found to exist; but it may be fairly inferred that his letters did contradict his statements as a witness, since it is said they were offered and admitted on that ground. If the jury came to the conclusion that George Rich was interested as a party, and so incompetent to testify, the letters were admissible, because the admissions of a party in interest, though not a party to the suit, are equally admissible as if he were such party. 1 Greenl. Ev. 203, sec. 171; *Carleton* v. *Patterson*, 29 N. H. 586.

The letters of Keyes were admissible to contradict his testimony, and they were admitted distinctly for that purpose.

The evidence of Buttman was not admissible. He testifies that he made a charge against the plaintiff on the books of the deceased, by his direction. He does not pretend that he had any knowledge that the charge was proper, except the statement of the deceased. This was mere hearsay, a repetition in writing of a statement made by the deceased, which must stand on the same ground as any other hearsay.

For some purposes the books of account of the deceased, properly verified by his executor, were admissible in evidence. If they were impeached on the ground that the charge in question was not made by the deceased, but by a clerk, and that the clerk should be produced, his evidence might be received, and if he had no personal knowledge of the transaction upon which the charge was made, his evidence that the entry was made in the presence and by the direction of the deceased might be admissible, to show that the charge, though made by another's pen, was really the act of the deceased. It may be fairly inferred from the case as stated, that this was the view taken of the case. But the book of the deceased, if shown to be in his own hand-writing, would not be evidence of the payment of such a sum as this, as was ruled by the court, nor indeed of any cash payment exceeding $6.66. *Bassett* v. *Spofford*, 11 N. H. 267.

It is said to be a general rule, that where an account is rendered, he who receives it is bound to examine it. If he admits it to be correct, it becomes a stated account, and is binding on both parties. If, instead of an express admission of its correctness, the party receiving it keeps the same by him, and makes no objection within a reasonable time, his silence will be construed into an acquiescence in its justness, and he will be bound by it, as if it were a stated account. *Phillips* v. *Belden*, 2 Edw. Ch. 1. But the omission of a party to object to an account rendered, raises only a presumption of its correctness, which

may be rebutted by proof of any circumstances tending to a contrary inference. *Lockwood* v. *Thorne*, 4 Smith (18 N. Y.) 285.

In 1 Story's Eq., sec. 526, it is said, in order to make an account stated, it is not necessary that it should be signed by the parties. It is sufficient that it has been examined and accepted by both parties. And the acceptance need not be express, but may be implied from circumstances. Between merchants at home, an account which has been presented and no objection made thereto after the lapse of several posts, is treated under ordinary circumstances as being by acquiescence a stated account. Between merchants in different countries, if an account has been transmitted from one to the other, and no objection is made after several opportunities of writing have occurred, it is treated as an acquiescence in the correctness of the account transmitted, and therefore it is deemed a stated account. The rule is that an account rendered shall be deemed stated from the presumed approbation or acquiescence of the parties, unless an objection is made thereto within a reasonable time. That reasonable time is to be judged of in ordinary cases by the habits of business at home and abroad. The authorities cited to these points are very numerous. *Lockwood* v. *Thorne*, 1 Kern. 170.

The rule as thus stated does not apply in the cases of persons who are not merchants. But some presumption of assent to the correctness of an account rendered, from the silence and acquiescence of the party, without making any objection after a reasonable opportunity has elapsed for its examination, and reasonable time for objecting, arises with more or less force in the case of all persons who can be properly regarded as men of business, considering the nature of their business and education, their local situation, and other circumstances, such presumptions applying with most force in cities, and being slightly regarded in the country. Here the parties were

engaged, as it would appear from the case, somewhat extensively in the business of lumbering, and seem to have been trading men, and we think the instructions of the court on the subject were reasonable and proper.

The exception as to the competency and effect of the auditor's report is without foundation. The statute is quite decisive. Rev. Stat., ch. 189, sec. 5. "If either party is dissatisfied with the report, the case may be tried by the jury, and such report shall be given in evidence to the jury, subject to be impeached by evidence offered by either party."

On the exception as to Buttman's testimony,

*Verdict set aside.*